**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
376 E. Warm Springs Road, Suite 120
Las Vegas, Nevada 89119
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

TROY GINES, an individual,

      Plaintiff,

v.

CLARK COUNTY SCHOOL DISTRICT, a
political subdivision of the State of Nevada;
DANIEL CIARCIAGLINI, an individual,

      Defendants.

CASE NO. 2:25-cv-01630-GMN-NJK

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST AMENDMENT AND NEVADA CONSTITUTIONAL CLAIMS AS TO DEFENDANT CIARCIAGLINI**

Plaintiff Troy Gines, by and through his counsel, Adam J. Breeden, Esq. of Breeden & Associates, PLLC, hereby moves for partial summary judgment on liability under Fed. R. Civ. P. 56 as to his First Amendment claim under 42 U.S.C. § 1983 and his parallel state-constitutional claim under Article I, Section 9 of the Nevada Constitution against Defendant Daniel Ciarciaglini. There is no genuine dispute of material fact, and Plaintiff is entitled to judgment as a matter of law on liability on these claims.

## I.    INTRODUCTION

This case presents one of the clearest First Amendment violation and retaliation cases this Court is likely to see. On November 20, 2023, Plaintiff Troy Gines—a Marine Corps veteran and father of three—stood on a public sidewalk and used his cell phone to record Defendant Daniel Ciarciaglini, a Clark County School District police officer, during a traffic stop of another motorist. Gines stood approximately ten to fifteen feet away. He carried no weapon, used no threatening language, made no physical contact with the officer, and did not impede the officer's work in any

way. His only conduct was the exercise of his clearly established constitutional right to film law enforcement in a public place. For that conduct—and that conduct alone—Ciarciaglini abandoned the traffic stop, handcuffed Gines, took his phone, arrested Gines, and transported him to jail.

The factual record is unusually clean. The entire encounter—from Gines' arrival through his handcuffing—was captured in real time on two videos: Gines' own cell phone recording[1] and Ciarciaglini's body-worn camera.[2] At deposition, Ciarciaglini admitted every material fact: that Gines stood approximately ten feet away, that he was visibly recording, that the recording was legal, that he was on a public sidewalk open to any member of the public, that he had no weapon, that he did not resist, and that he never tried to punch, kick, or bite the officer.[3] Ciarciaglini admitted he abandoned the traffic stop solely because Gines' "close proximity"—not his conduct—"was the problem."[4]

The matter has, in fact, already been adjudicated on the merits. A Nevada state court of record—the Eighth Judicial District Court of Clark County sitting as an appellate court—reviewed the same video, heard from Ciarciaglini as the sole prosecution witness, and on June 23, 2025, issued a final order vacating Gines' obstruction conviction on three independent grounds, including the express finding that "Gines' actions were protected activity under the First Amendment and Nevada state law" and that his "conviction would infringe on those civil rights."[5] The City of North Las Vegas did not appeal. That judgment is final.

Despite the State Court Order, Ciarciaglini testified at his deposition in this matter that his views are unchanged, that he "still believe[s] that Mr. Gines committed obstruction," and that he

---

[1]Exhibit 1, Gines Cell Phone Video ("Incident Video").
[2]Exhibit 2, Ciarciaglini Body-Worn Camera Video ("BWC Video").
[3]Exhibit 3, Deposition of Daniel Ciarciaglini (April 30, 2026) ("Ciarciaglini Depo.") at 55:16–20, 55:22–56:2, 56:17–57:8, 64:12–18, 65:10–12.
[4]*Id.* at 65:17–18 ("Him recording was not the problem. Him being present in that close proximity was the problem.").
[5]Exhibit 4, Order and Decision Granting Appeal, Gines v. City of North Las Vegas, Case No. C-24-387215-A (Eighth Judicial District Court, June 23, 2025) ("State Court Order"), at GINES 000160.

believes "the [Court's] ruling is wrong."[6] He has not been disciplined, retrained, or counseled in any way.[7]

Partial summary judgment in Plaintiff's favor is warranted on two independent grounds. First, the final state-court adjudication of the precise constitutional issue collaterally estops Defendant from relitigating his First Amendment violation. Second, even on de novo review, the uncontroverted video and Defendant's own admissions establish each element of the First Amendment retaliation claim as a matter of law. Because Article I, Section 9 of the Nevada Constitution is co-extensive with the First Amendment, summary judgment is equally compelled on the parallel state constitutional tort claim.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  The November 20, 2023 Incident

At approximately 7:00 a.m. on November 20, 2023, Defendant Ciarciaglini was conducting a routine traffic stop of a silver Honda on Revere Street, near Legacy High School in North Las Vegas.[8] Plaintiff Gines, driving a large cargo van, parked behind the patrol vehicle approximately 25 to 50 feet to the rear, on a public street.[9] Gines had two prior encounters with Ciarciaglini—including one in which the officer had cited him for an illegal left turn that Gines believed had been issued in error. Gines had actually stopped that day to video the location of his prior citation to show the judge a video of the poorly marked area at a Court hearing later that week. By chance, as he was wrapping up, the same officer, Ciagciaglini, pulled over another vehicle so Gines decided to document the officer's conduct.[10]

---

[6]Exhibit 3, Ciarciaglini Depo. at 70:5–7, 99:13–15, 100:7–11.
[7]*Id.* at 100:13–17.
[8]*Id.* at 63:9–64:1 (time of morning and location of the traffic stop near Legacy High School); see also Exhibit 5, Crime Report.
[9]Exhibit 3, Ciarciaglini Depo. at 63:24–64:1 (officer testifying Gines' vehicle was "approximately about 25 feet" behind his patrol unit); Exhibit 6, Deposition of Troy Gines (June 9, 2026) ("Gines Depo.") at 92:6–7 (Gines testifying he parked "at least 50 feet" behind the patrol car).
[10]Exhibit 6, Gines Depo. at 80:6–14, 87:10–88:4 (Gines testifying he stopped to film after seeing the same officer who had previously issued him what he believed was an illegal traffic citation); Exhibit 3, Ciarciaglini Depo. at 51:14–20 (describing the prior citation issued to Gines for an illegal left turn).

3

Gines parked behind the police vehicle, exited his vehicle, activated his cell phone camera, and walked along *a public sidewalk* toward the front of the stopped Honda.[11] Ciarciaglini conceded at deposition that the sidewalk was open to any member of the public and was not in a restricted area.[12] When Gines stopped walking, he positioned himself at the front passenger corner of the Honda, in the officer's direct line of sight, approximately ten to fifteen feet from Ciarciaglini.[13] Gines specifically testified that he positioned himself in front of the officer "to make sure I was in his line of sight, so he had no issues with seeing me, so he could continue doing what he was doing without me interfering or obstructing him doing it."[14]

Ciarciaglini admitted at deposition that Gines was not brandishing any weapon and that no weapon was found on his person after the arrest.[15] Gines did not resist, did not attempt to punch, kick, or bite the officer, used no profane or insulting language, and made no physical contact with the officer.[16] Ciarciaglini further admitted that Gines was openly recording him on an iPhone, that recording an officer is legal."[17]

---

[11]Exhibit 6, Gines Depo. at 80:6–14, 87:18–88:18; Exhibit 3, Ciarciaglini Depo. at 51:14–20.

[12]Exhibit 3, Ciarciaglini Depo. at 64:12–18 (officer confirming Gines was on a public sidewalk open to any member of the public); *id.* at 65:3–4 (officer confirming the sidewalk was not in a restricted area).

[13]Exhibit 6, Gines Depo. at 93:8–17 (Gines testifying he was approximately 15 feet from the officer at the "V" of the car door); *id.* at 64:14–20 (Gines testifying he was "15 or 20 feet away"); Exhibit 3, Ciarciaglini Depo. at 55:16–20 (officer agreeing Gines was "approximately" ten feet away when he initially approached).

[14]Exhibit 6, Gines Depo. at 93:11–17.

[15]Exhibit 3, Ciarciaglini Depo. at 56:17–23 (officer testifying "He was not brandishing a weapon" and confirming no weapon was found on Gines' person after he was searched).

[16]Exhibit 1, Incident Video; Exhibit 2, BWC Video; Exhibit 3, Ciarciaglini Depo. at 56:24–57:8 (officer confirming Gines did not resist arrest and did not attempt to punch, kick, or bite him); Exhibit 6, Gines Depo. at 64:8–11 (Gines testifying "I didn't physically touch the guy. I didn't get between him and the car. I didn't do anything. I just walked up said, how are you doing, and was filming him.").

[17]Exhibit 3, Ciarciaglini Depo. at 55:22–56:2, 65:10–12, 65:17–18.

B. **What the Videos Show**

The entire encounter—from Gines' arrival to his handcuffing—was captured both on Gines' cell phone[18] and on Ciarciaglini's body-worn camera.[19] The videos show Gines walking calmly on a public sidewalk with the camera raised; coming to a stop approximately ten to fifteen feet from the officer; Ciarciaglini ordering Gines to "back up"; Gines politely declining and stating he was at "10 feet," which he believed to be a safe and lawful distance; and Ciarciaglini abandoning the traffic stop to arrest Gines for obstruction. At no point do the videos show Gines approaching the officer, making any threatening movement, using profane or insulting language, or impeding the traffic stop in any physical manner. Gines remains polite throughout; when the officer instructs him to put his hands behind his back, he immediately complies. The verbal exchange—the entirety of the conduct upon which the arrest was based—lasted less than thirty seconds and is reproduced verbatim below:[20]

> **GINES:** How you doing today?
>
> **OFFICER:** Back up.
>
> **GINES:** 10 feet.
>
> **OFFICER:** No it's not. There's no law that tells me . . . So back up to those right there.
>
> **GINES:** No, I'm 10 feet.
>
> **OFFICER:** I'm going to arrest you for obstruction. I need you to back up.
>
> **GINES:** There's no obstruction dude.
>
> **OFFICER:** At this point this is a traffic stop, you're parked behind me and you're obstructing me.
>
> **GINES:** I'm not obstructing.
>
> **OFFICER:** I need you to back up sir, I'm going to arrest you if you don't. [walking toward Gines]
>
> **GINES:** I'm not obstructing.

---

[18]Exhibit 1, Incident Video.
[19]Exhibit 2, BWC Video; Exhibit 3, Ciarciaglini Depo. at 55:6–8.
[20]Exhibit 1, Incident Video; see also Exhibit 7, Transcript of Incident Video.

**OFFICER:** Go ahead and put your hands behind your back.
[grabbing Gines and handcuffing him]

**GINES:** Alright.

## C. The Arrest, Prosecution, and Conviction

Ciarciaglini chose to perform a full custodial arrest rather than issue a citation. He handcuffed Gines, seized the cell phone (terminating the recording),[21] booked Gines into jail, and ultimately recommended three charges: (1) obstructing a public officer under NRS § 197.190; (2) expired vehicle registration (later dismissed as a DMV error); and (3) illegal stopping under NRS § 484B.440, which is a civil infraction only under Nevada law.[22] Ciarciaglini conceded at deposition that for civil citations, "you should not arrest," and that CCSD policy and Nevada law generally prefer issuance of a citation in lieu of custodial arrest for minor offenses.[23] He nonetheless took Gines to jail, seemingly to punish him for properly asserting his Constitutional right to film the officer.

A criminal trial on the obstruction charge was held in the North Las Vegas Municipal Court before the Honorable Chris Lee. The sole exhibit was Gines' cell phone video. The only witness was Ciarciaglini. Initially, the municipal court found Gines guilty of obstruction and sentenced him to fines, twenty-four hours of community service, and a thirty-day suspended jail sentence.[24]

## D. The Eighth Judicial District Court's Final Order Holding That Gines' Arrest Violated the First Amendment

Gines timely appealed to the Eighth Judicial District Court of Clark County (Case No. C-24-387215-A), arguing among other things that his arrest did not constitute obstruction under Nevada law and that the arrest violated his constitutional right to film law enforcement under the

---

[21]Exhibit 1, Incident Video (ending abruptly when officer seizes Gines); Exhibit 3, Ciarciaglini Depo. at 56:3–11 (officer testifying that when he grabbed Gines' arm to place him in custody, the recording stopped, and he took possession of all of Gines' property).

[22]Exhibit 5, Crime Report; Exhibit 3, Ciarciaglini Depo. at 15:5–13 (officer confirming his decision to recommend the three charges).

[23]Exhibit 3, Ciarciaglini Depo. at 53:10–17 ("For civil citations, no. They're not required to sign it, so you should not arrest for civil."); *id.* at 54:5–22.

[24]Exhibit 8, North Las Vegas Municipal Court Judgment and Sentencing Order, City of North Las Vegas v. Troy Gines, Case No. CR004172-23 (Sept. 24, 2024), at GINES 000042.

6

First Amendment and the Nevada Constitution. On June 23, 2025, the District Court issued a written Order and Decision Granting Appeal, reversing and vacating the obstruction conviction.[25]

The State Court Order rested on three independent constitutional and statutory grounds. First, the court expressly held: "Gines' actions were protected activity under the First Amendment and Nevada state law. As his conviction would infringe on those civil rights, his conviction must be vacated."[26] The court reviewed the same video that is before this Court and found that "Gines' only real activity was to film the officer from a distance of 10-15 feet from a public sidewalk" and that "[h]e made no threatening gestures toward the officer at all."[27]

Second, the court held that the City of North Las Vegas "failed to establish the physicality requirement to support a conviction for obstruction of a peace officer" under the Nevada Court of Appeals' controlling decision in *Willson v. First Judicial Dist. Court*, 140 Nev. Adv. Op. 7 (Nev. Ct. App. Feb. 22, 2024).[28]

Third, the court held that the City "failed to show any specific intent of Gines to obstruct the officer," explaining that "merely filming an officer cannot form such specific intent because such conduct is expressly permitted by State and Federal law."[29]

The City of North Las Vegas did not appeal. The State Court Order, which expressly found that the Defendant violated Gines' First Amendment rights, is final.

### E. Ciarciaglini's Continued Refusal to Acknowledge the Constitutional Violation

Despite the binding state-court adjudication, Defendant testified at his deposition in this case that his views are unchanged. After being shown the Court of Appeals' decision in *Willson*, he testified that his opinion of what constitutes obstruction "has not" changed.[30] He testified, "I do not" believe "I violated Mr. Gines' First Amendment rights."[31] He testified, "I do still believe that Mr.

---

[25]Exhibit 4, State Court Order.
[26]*Id.* at GINES 000160.
[27]*Id.* at GINES 000160.
[28]*Id.* at GINES 000160.
[29]*Id.* at GINES 000161.
[30]Exhibit 3, Ciarciaglini Depo. at 70:5–7.
[31]*Id.* at 99:13–15.

Gines committed obstruction.. I believe that the ruling is wrong."[32] He confirmed that he has not been disciplined, retrained, or counseled in any manner as a result of the incident.[33]

### F.  This Civil Rights Action

On July 28, 2025, Gines filed the instant action in state court, which Defendants removed to this Court. The Complaint asserts, inter alia: (1) a 42 U.S.C. § 1983 claim against Ciarciaglini for First Amendment retaliation and violation of the right to film law enforcement; and (2) a Nevada constitutional tort claim under Article I, Section 9 of the Nevada Constitution.[34]

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" only if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, the moving party would bear the burden at trial, it must affirmatively demonstrate the absence of any genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Once that burden is met, the nonmoving party must come forward with "specific facts showing there is a genuine issue for trial." *Id.* at 322–23.

Critically, where an event is fully captured on video, the court "should view[] the facts in the light depicted by the videotape" rather than adopt a party's characterization contradicted by the recording. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The Ninth Circuit applies this rule with full force in officer-conduct cases. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). When considering whether a citizen's conduct justified arrest under a verbal command, the Court may evaluate the citizen's "behavior, demeanor, and distance from the officers." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1090 (9th Cir. 2013). Here, the encounter is captured in its entirety on two videos, and Defendant's own deposition testimony is consistent with what the videos

---

[32]*Id.* at 100:7–11.
[33]*Id.* at 100:13–17.
[34]Complaint (filed July 28, 2025), attached as Exhibit A to Defendants' Petition for Removal, ECF No. 1.

depict. No reasonable jury could find otherwise and the facts of what occurred are essentially undisputed.

## IV.    ARGUMENT

### A.    The Uncontroverted Video Evidence and Defendant's Own Admissions Establish Every Material Fact as a Matter of Law

When video captures the entirety of a disputed incident without contradiction, federal courts need not indulge competing narratives. *Scott v. Harris*, 550 U.S. at 380 ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Vos*, 892 F.3d at 1028. Here, every material fact is undisputed because every material fact is on tape and confirmed by Defendant's sworn admissions:

- Gines was on a public sidewalk in a non-restricted area, open to any member of the public.
- Gines was openly recording the officer on an iPhone, which Ciarciaglini admits is legal conduct.
- Gines was approximately ten to fifteen feet from the officer—a distance the officer himself cited at trial and confirmed in deposition.
- Gines was unarmed; no weapon was found on his person.
- Gines did not resist arrest, did not attempt to punch, kick, or bite the officer, and did not use profane or insulting language.
- Gines positioned himself deliberately in the officer's line of sight so he would not interfere with the traffic stop.
- The officer abandoned a routine traffic stop to arrest Gines, and the officer himself admits that the sole "problem" was Gines' "close proximity" while recording.

Because the video "blatantly contradicts" any narrative of physical threat, fighting words, or intent to obstruct, and because Ciarciaglini's own testimony confirms what the video depicts, there is no genuine dispute of any material fact. This Court can and should determine liability on the

uncontroverted record—the very same record reviewed by the state court, which reached the same conclusion.

### B. The Final State Court Order Collaterally Estops Defendant From Relitigating His First Amendment Violation

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. The Supreme Court has confirmed that "res judicata principles fully apply to civil rights suits brought under [§] 1983." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Under the doctrine of offensive non-mutual collateral estoppel, a civil plaintiff may prevent a defendant—or one in privity with him—from relitigating an issue actually and necessarily decided against him in prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–32 (1979). Because the prior judgment was rendered in Nevada, Nevada's issue-preclusion test governs. *Blanch v. LVMPD*, No. 2:14-cv-1762-GMN-VCF, 2016 WL 1048012, at *2 (D. Nev. Mar. 10, 2016) (citing *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990)). Nevada's test requires:

> (1) the issue decided in the prior litigation [is] identical to the issue presented in the current action; (2) the initial ruling [was] on the merits and [is] final; (3) the party against whom the judgment is asserted [was] a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

*Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054 (2008). Every element is satisfied here.

First, the issues are identical. The State Court Order squarely decided whether Ciarciaglini's arrest of Gines—for filming him from ten to fifteen feet away on a public sidewalk—violated Gines' First Amendment rights. The court held in plain terms: "Gines' actions were protected activity under the First Amendment and Nevada state law. As his conviction would infringe on those civil rights, his conviction must be vacated."[35] That is the same constitutional question now before this Court.

---

[35]Exhibit 4, State Court Order at GINES 000160.

10

Second, the State Court Order was rendered on the merits and is final. The City of North Las Vegas did not appeal. Under Nevada law, the Order is conclusive.

Third, Ciarciaglini is in privity with the State and the prosecuting municipal entity for purposes of collateral estoppel. This Court has squarely so held in an analogous civil rights matter. In *Padilla v. Knickerbocker*, No. 2:20-cv-00066-KJD-VCF, 2023 U.S. Dist. LEXIS 187939 (D. Nev. Oct. 18, 2023), the plaintiff sued officers civilly after the Nevada Supreme Court reversed his conviction on the ground that the officers had conducted an unconstitutional warrantless search. Judge Dawson held that the arresting officers were in privity with the State for issue-preclusion purposes because the officers "were essentially being represented by the State, and this representation is sufficient for privity." *Id.* The same is true here. Ciarciaglini was the sole prosecution witness on the obstruction charge and arresting officer; the City of North Las Vegas defended the conviction; the City's interest in defending the lawfulness of the arrest was identical to Ciarciaglini's; and Ciarciaglini and his employing agency are state actors. See also *Ayers*, 895 F.2d at 1271 (recognizing that prior state-court findings from criminal proceedings may be given preclusive effect in later § 1983 actions, in that case applying claim preclusion to dismiss the action).

Fourth, the constitutional issue was actually and necessarily litigated. The State Court Order independently rested on the First Amendment ground; the constitutional ruling was a freestanding basis for vacatur and was "essential" to the judgment. *Five Star Capital*, 124 Nev. at 1054. The state court reviewed the same video that is before this Court, heard from the same officer, and applied federal First Amendment doctrine before concluding that the arrest violated Gines' constitutional rights.

Because every element of Nevada issue preclusion is met, summary judgment on liability should be entered in Plaintiff's favor. To allow a federal jury to reach a contrary conclusion on the same record and the same constitutional question already adjudicated would undermine the comity and finality required by 28 U.S.C. § 1738.

C. **<u>Even on De Novo Review, the Undisputed Record Establishes a First Amendment Violation as a Matter of Law</u>**

Independent of issue preclusion, the uncontroverted evidence establishes each element of a First Amendment violation. The analysis proceeds in two steps: (1) Gines was engaged in clearly established protected activity, and (2) Ciarciaglini's arrest is a textbook case of First Amendment retaliation.

1. ***The First Amendment Right to Film Law Enforcement in Public Is Clearly Established***

The First Amendment protects "a right to film matters of public interest," including the public filming of police officers performing their duties. *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). The Ninth Circuit has recognized this right since at least 1995, and federal courts in this circuit have consistently applied it. See, e.g., *McComas v. City of Rohnert Park*, No. 16-cv-02705-TEH, 2017 U.S. Dist. LEXIS 50783, at *7 (N.D. Cal. Apr. 4, 2017) ("A reasonable officer in [defendant's] position would have known that it is a violation of a constitutional right to harass an individual who is peacefully filming the officer."); *Adkins v. Limtiaco*, 537 F. App'x 721 (9th Cir. 2013).

Every other circuit to reach the question has held the same. The First Circuit's decision in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011), is on all fours with this case and was relied upon by the state court below. There, the plaintiff was arrested for filming officers from approximately ten feet away on a public sidewalk. The First Circuit held that "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Id.* at 83. The court emphasized that "Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Id.* at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Accord *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.").

The Supreme Court has long recognized that the public has an especially weighty First Amendment interest in scrutinizing those exercising the coercive power of the state. "[T]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1035–36 (1991); see also *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("[M]any governmental processes operate best under public scrutiny.").

Nevada law also squarely codifies the same right.[36] NRS § 171.1233(1) expressly provides that "[a] person who is not under arrest or in the custody of a peace officer may record a law enforcement activity and maintain custody and control of that recording." Subsection (2) further prohibits officers from (a) intentionally preventing recording; (b) threatening the recorder; (c) commanding the person to cease recording; (d) stopping or seizing the person because they recorded; or (e) seizing the property used to record. Ciarciaglini's conduct in this case implicated every one of those statutory prohibitions.

Officers are not entitled to be free from videotaping merely because they find it inconvenient or uncomfortable. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). Officers must "endure public scrutiny," and the "restraint demanded of law enforcement officers in the face of 'provocative and challenging' speech…must be expected when they are merely the subject of videotaping that memorializes, without impairing, their work in public spaces." *Glik*, 655 F.3d at 84. Here, of course, even that point is academic: Gines did not resort to criticism. He simply filmed.

### 2. This Is a Textbook First Amendment Retaliation Case

To prevail on a First Amendment retaliation claim under § 1983, a plaintiff must establish that (1) the defendant's action would chill a person of ordinary firmness from engaging in future First Amendment activity, and (2) deterrence of constitutionally protected conduct was a substantial or motivating factor in the defendant's action. *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d

---

[36] Nevada statutory law does not, by itself, establish a First Amendment violation. However, the statute tracks the Ninth Circuit's interpretation of the First Amendment in this context and, thus, is cited as persuasive authority.

1283, 1300–01 (9th Cir. 1999); *Ford v. City of Yakima*, 706 F.3d 1188, 1193–94 (9th Cir. 2013). Retaliatory intent may be shown through direct or circumstantial evidence. *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir. 1997).

Both elements are established beyond any genuine dispute. As to the first, a custodial arrest—resulting in handcuffing, transport to jail, booking, charging, and prosecution—"always satisfies" the chilling element. *Naveed v. City of San Jose*, No. 15-cv-05298-PSG, 2016 U.S. Dist. LEXIS 67570, at *5 (N.D. Cal. May 23, 2016) (citing *Ford*, 706 F.3d at 1193–94). In *Naveed*, as here, plaintiffs began filming an arrest, were slammed against a car, and were arrested. The court held that the plaintiffs' First Amendment right to film had been abridged. *Id.* The same principle controls this case.

As to the second element, the causal connection is direct and unambiguous. The videos show that Ciarciaglini abandoned the traffic stop the moment Gines began filming him from the public sidewalk. Ciarciaglini's own deposition testimony confirms that the "problem" was Gines' "close proximity" while recording—language inseparable from the protected act of filming.[37] There is no record evidence of any independent, non-retaliatory ground for the arrest. The officer had no warrant; he observed no crime; he saw no weapon; and no obstruction in fact occurred. As the state court already found on the same record, "merely filming an officer cannot form" the specific intent required for obstruction "because such conduct is expressly permitted by State and Federal law."[38]

Defendant's post-arrest deposition admissions only reinforce the retaliatory motive and the absence of any factual dispute. Asked whether any statute, ordinance, or policy supports the "ten-foot" rule he relied on, Defendant conceded there is none—"It is an officer's discretion."[39] Asked whether he believes he violated Gines' First Amendment rights, he testified, "I do not."[40] Asked about the state court's ruling, he testified, "I believe that the ruling is wrong."[41] This is not the

---

[37]Exhibit 3, Ciarciaglini Depo. at 65:17–18.

[38]Exhibit 4, State Court Order at GINES 000161.

[39]Exhibit 3, Ciarciaglini Depo. at 66:4–11 ("There is no policy. It is an officer's discretion… Nevada has — does not have anything.").

[40]*Id.* at 99:13–15.

[41]*Id.* at 100:7–11.

testimony of a defendant with a triable defense; it is the testimony of a defendant who, even after a state court of record has declared the arrest unconstitutional, refuses to acknowledge any error—and whose employer has neither disciplined nor retrained him.[42]

Summary judgment in favor of Gines on the § 1983 First Amendment claim is warranted.

### D. Summary Judgment Is Equally Warranted on the Nevada Constitutional Tort Claim

Article I, Section 9 of the Nevada Constitution provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects." The Nevada Supreme Court has expressly held that Article I, Section 9 "affords no greater protection to speech activity than does the First Amendment to the United States Constitution," and that "the same analysis used in First Amendment cases applies" to claims brought under it. *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 722, 100 P.3d 179, 187 (2004). Because the federal and state free-speech analyses are co-extensive, a First Amendment violation on these facts necessarily establishes a violation of Article I, Section 9. *Id.* The state court expressly so held.[43]

The Nevada Supreme Court has also confirmed that violations of self-executing rights guaranteed by the Nevada Constitution give rise to a private cause of action for retrospective monetary damages. *Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022). In adopting that rule, the *Mack* court embraced the framework articulated in *Katzberg v. Regents of the University of California*, 58 P.3d 339, 495 (Cal. 2002). Under the *Katzberg*/*Mack* framework, the Court first considers whether there is evidence within the constitutional provision itself of an affirmative intent to authorize or withhold a damages remedy, and, if no such intent is apparent, then evaluates the existence of adequate alternative remedies, the change such a remedy would work on existing tort law, the nature and significance of the constitutional right, and any practical considerations such as policy consequences and proof difficulties. *Mack*, 522 P.3d at 449–50; *Katzberg*, 58 P.3d at 495.

---

[42]*Id.* at 100:13–17.
[43]Exhibit 4, State Court Order at GINES 000160.

15

Each *Katzberg* factor weighs in favor of a damages remedy here. Article I, Section 9 is self-executing and contains no indication that the framers intended to withhold a damages remedy; the right to free speech and freedom of the press is among the most fundamental of all rights recognized under the Nevada Constitution; recognition of a damages action for First Amendment retaliation arrests does not disturb settled tort law but rather provides a meaningful remedy where none otherwise lies; and damages are not difficult to assess in cases involving a discrete, completed constitutional injury such as a wrongful custodial arrest. Indeed, in *Mack* itself, the court approved a damages remedy for violations of Article I, Section 18 in an analogous unconstitutional-search context. *Mack*, 522 P.3d at 449–51.

Equally important, the Nevada Supreme Court squarely held in *Mack* that qualified immunity is not a defense to claims for damages under the Nevada Constitution. *Id.* at 451. Thus, even if Defendant could mount some colorable qualified-immunity argument on the § 1983 claim—and he cannot, given the clearly established law set out above and the controlling state-court adjudication—the parallel Nevada constitutional tort claim would survive in any event and afford full relief.

The State Court Order's holding that Gines' conduct was "protected activity under the First Amendment and Nevada state law"[44] is independently and equally dispositive of the Nevada constitutional claim. The state court expressly analyzed both the federal and state free-speech standards. Summary judgment is appropriate on the Nevada constitutional tort claim for the same reasons it is warranted on the § 1983 claim.

## V.    CONCLUSION

The material facts are not in dispute. The law is clear. A peace officer arrested an unarmed, non-threatening citizen on a public sidewalk for the sole reason that he was filming the officer from approximately ten to fifteen feet away. A state court of record reviewed the same video and the same officer's testimony, and held that the arrest violated the First Amendment and the Nevada Constitution. That judgment is final. The officer concedes the recording was legal; concedes there

---

[44]*Id.* at GINES 000160.

is no statute, ordinance, or policy supporting his "ten-foot" rule; and yet refuses, even now, to acknowledge that the arrest was unlawful.

Summary judgment in Plaintiff's favor is warranted on two independent grounds: (1) the final state-court adjudication conclusively establishes the First Amendment violation under offensive non-mutual collateral estoppel; and (2) the uncontroverted video and Defendant's own deposition admissions establish each element of the First Amendment retaliation claim as a matter of law. Because Article I, Section 9 of the Nevada Constitution is co-extensive with the First Amendment, summary judgment is equally compelled on the Nevada constitutional tort claim.

Plaintiff Troy Gines respectfully requests that this Court grant his Motion for Partial Summary Judgment on liability as to Count I (42 U.S.C. § 1983—First Amendment) and Count II (Nevada Constitutional Tort) against Defendant Ciarciaglini, and set this matter for a trial on damages.

DATED this 30th day of June, 2026.

BREEDEN & ASSOCIATES, PLLC

/s/ Adam J. Breeden, Esq.

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
376 E. Warm Springs Road, Suite 120
Las Vegas, Nevada 89119
Phone: (702) 819-7770
*Attorneys for Plaintiff*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of June, 2026, I served a copy of the foregoing legal document **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST AMENDMENT AND NEVADA CONSTITUTIONAL CLAIMS AS TO DEFENDANT CIARCIAGLINI** via the method indicated below:

| | |
|---|---|
| X | Through the Court's ECF/CM system on all registered users |
| | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br><br>Thomas D. Dillard, Jr., Esq.<br>OLSON CANNON & GORMLEY<br>9950 W. Cheyenne Avenue<br>Las Vegas, Nevada 89129<br>*Attorneys for Defendants* |
| | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

*/s/ Kirsten Brown*

BREEDEN & ASSOCIATES, PLLC