# Exhibit 3

# Exhibit 3

Case 2:25-cv-01630-GMN-NJK    Document 20-2    Filed 06/30/26    Page 2 of 17

Daniel Ciarciaglini                    Troy Gines v. Clark County School District, et al.

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TROY GINES, an individual,              )
                                        )
                                        )
          Plaintiff,                    )
                                        )
vs.                                     )CASE NO.:
                                        )2:25-cv-01630-GMN-NJK
CLARK COUNTY SCHOOL DISTRICT,           )
a political subdivision of the          )
State of Nevada; DANIEL                 )
CIARCIAGLINI, an individual,            )
                                        )
                                        )
          Defendants.                   )
_____)

VIDEOTAPED DEPOSITION OF DANIEL CIARCIAGLINI

Taken on Thursday, April 30, 2026,

At 1:05 p.m.

By a Certified Court Reporter

At 6655 West Sahara Avenue, Suite A-200

Las Vegas, Nevada

Stenographically reported by: Johanna Vorce, CCR No. 913

Job No.: 64476, Firm No. 116F

Daniel Ciarciaglini                    Troy Gines v. Clark County School District, et al.

A.    Yes.

Q.    Is there any part of this report that's prepared or written by someone other than you?

A.    No.

Q.    Okay.  And was it your decision to recommend the three charges that are recommended or listed on the last page?

Those would be obstruction of an officer, there's a vehicle registration offense, and a -- and a parking offense.

Was that you that made the decision to -- to arrest for those?

A.    Yes.

Q.    Okay.  Just looking at Exhibit 1, do you think this is a full and accurate copy of the report that you prepared for this incident?

A.    It is a accurate report.  It doesn't have every detail of the entire incident because that would take a lot more time.

Q.    I guess, my question is, in looking at this, is there anything from the report you think is missing?  For example, you prepared another page or a diagram or something.

A.    No.

Q.    I want just some very limited background

Daniel Ciarciaglini                           Troy Gines v. Clark County School District, et al.

Page 51

accepting the citation.  His comments afterwards, during the stop.  I know I walked away from the car.  I remember that.  After I gave him the citation, I -- I recall walking away because of his screaming.

Q.   Well, is it unusual for people that you've pulled over for traffic stops to protest that they didn't commit an offense?

A.   Is it unusual for how extensive he was?  Yes.

Q.   Okay.  Well, I guess, phrased differently, I mean, don't you hear a lot from people, Oh, I wasn't speeding, or, I didn't do that, or, What I did was fine?  That's pretty common, isn't it?

A.   Yes.  People talking, yes.

Q.   Okay.  What did you -- the prior incident on 11/2, what did you cite Mr. Gines for?

A.   Again, I'd have to look at the citation.  I believe it was the making a left turn on -- through the gorge [sic].  I believe it's the exact same citation that this indiv- -- actually, he doesn't have it, but it's making a -- making an illegal left turn.

Q.   Is that a criminal citation or a civil citation?

A.   I believe it's civil now.

Q.   Okay.  Do you know -- so my understanding is there was a time when the law changed in Nevada and most traffic infractions were changed from criminal to civil citations.

Daniel Ciarciaglini                          Troy Gines v. Clark County School District, et al.

Page 53

There's cones there with diagonal lines going across. That's called a "gore," and that's an ill- -- that's not a turn lane.

So the individual created their own turn lanes to make a left or a right turn.  Depends on what they want to do.  But there's a designated left turn, there's a designated right turn, and then there's the gore, a median, a center lane, but it's -- the official name for it is a "gore."

Q.   And what is your understanding at that time, if you issue someone a civil citation, are you allowed to perform a custodial arrest?

MR. DILLARD:  Legal conclusion without application of fact.

But you can respond.

THE WITNESS:  For civil citations, no.  They're not required to sign it, so you should not arrest for civil.

BY MR. BREEDEN:

Q.   Okay.  What -- what is your understanding, in general, of when you are permitted to do a custodial arrest?

MR. DILLARD:  Same objection.

But please go.

THE WITNESS:  When can you do a custodial arrest? Whenever there's -- an individual's committed a crime, refused to sign a citation, refused to accept a citation, is

Daniel Ciarciaglini                        Troy Gines v. Clark County School District, et al.

Page 54

likely to continue doing the same crime, is -- unless an

intervention is taken.  It's a broad subject.  It just

depends on circumstances.

BY MR. BREEDEN:

Q.   To your knowledge, are there any circumstances

where you as an officer can only issue a citation?  You

can't perform an actual custodial arrest?

A.   I believe those are civil citations, yes.

Q.   Okay.  Are there any criminal offenses that you

also are not permitted to make a custodial arrest?

A.   It's not "not permitted."  It's that they would

like for you to issue a citation, unless, if the individual

is going to continue committing the same crime, then you

have discretion to still continue to arrest.

So there are a list of minor offenses, as they

would call them, minor criminal offenses, where they would

prefer you to write a citation, unless, if it's -- there's

circumstances, habitual, has he committed this crime again

before, is he going to continue committing the crime.

Q.   When you say "they would prefer," do you mean the

Clark County School District?

A.   No.  A policy as well as NRS.

Q.   Okay.  Whose policy?  The Clark County School

District?

A.   Clark County School District Police Department,

LEXITAS™

Page 55

yes.

Q.   So the next encounter that you have with Mr. Gines is the one that we're here to discuss today or the one that forms the basis of the complaint against you that occurred November 20th of 2023.

And you've recently reviewed the video from that event; is that correct?

A.   Yes.

Q.   And how -- how -- when was the last time you -- how recent have you reviewed it?  That's the word I was looking for.

A.   I briefly reviewed it last night, went over the beginning of it.  Didn't watch the whole thing because it's 50-something minutes, but I reviewed the major incident of the prior to the arrest.

Q.   Would you agree with me that when Mr. Gines initially approaches he is approximately ten feet from you?

MR. DILLARD:  Form.  Ambiguous.

Go ahead.

THE WITNESS:  Approximately, yes.

BY MR. BREEDEN:

Q.   Would you agree that he was recording you on a -- on an iPhone?

A.   Yes.

Q.   Okay.  And you saw that he was recording you,

Daniel Ciarciaglini

Troy Gines v. Clark County School District, et al.

Page 56

correct?

A.   Yes.

Q.   Okay.  And when you approached Mr. Gines, did you grab his iPhone?

A.   I did not.

Q.   Okay.  How is it that the recording stopped?

A.   I grabbed his arm to put him in -- place him in custody.

Q.   Okay.

A.   So once he was in custody, then I took possession of all his property, yes.

Q.   Okay.  And so do you recall you turning the iPhone off so it stopped recording?

A.   I don't recall that.

Q.   Okay.

A.   I believe -- I don't know if he did or I did it.

Q.   Do you agree that when you first observed Mr. Gines on that date he was not brandishing a weapon?

A.   He was not brandishing a weapon.

Q.   Okay.  Do you agree with me that, even after you arrested him and you searched him, there was no weapon on his person?

A.   Not on his person, no.

Q.   Okay.  And would you agree with me that Mr. Gines did not attempt to resist arrest by you?

Page 57

A.   He did not resist arrest.

Q.   Would you agree with me that he never tried to punch you?

A.   He did not try to punch me.

Q.   Do you agree he didn't try to kick you?

A.   He did not try to kick me.

Q.   Do you agree he didn't try to bite you?

A.   Did not try to bite me.

Q.   Okay.  When you reviewed the video, you agree that you arrested Mr. Gines, right?

A.   I did arrest Mr. Gines.

Q.   Did you see on the video where you read him his Miranda rights?

A.   I didn't go that far.  But no, I don't believe I ever read him his Miranda rights.

Q.   Okay.  What's your understanding of when you need to read a person you have detained or arrested their Miranda rights?

MR. DILLARD:  Legal conclusion.

Go ahead.

THE WITNESS:  If there's an interrogation or custodial arrest with an interrogation going on, if you're asking specific questions relevant to this that you're -- that you're going to be using.

I had no question -- or go.  Continue.

Daniel Ciarciaglini

Troy Gines v. Clark County School District, et al.

Page 63

A.    He was -- he was issued a warning.

Q.    Okay.  Did you ever have any information or any reason to believe that Mr. Gines knew the other person that you had pulled over?

A.    I asked the individual, and he stated no.

Q.    Okay.  Do you have any reason to believe that -- that that's untrue and -- and they knew each other?

A.    Not -- not at this time.

Q.    Okay.  Do you remember the time of day this occurred?

A.    Morning.  Seven -- between 6:30, 7:30.

Q.    Okay.  And where did this occur?

A.    This was on Revere and Deer Springs.

Q.    And, you know, we can see the camera, but the camera doesn't show, like, a 360 view or everything you can see.

Can you explain to me where Mr. Gines' vehicle was and where the vehicle you had pulled over was and -- and what sort of led up to this?

A.    The individual made the left turn onto Revere. It's -- I couldn't tell you the exact footage, excuse me, from how far from Deer Springs it actually is, but it's on the right side of the road in a travel lane.

Mr. -- Mr. Gines' vehicle was approximately about 25 feet from behind my vehicle, my patrol unit with lights

 

Daniel Ciarciaglini                          Troy Gines v. Clark County School District, et al.

Page 64

on.  Other than that --

Q.   Okay.

A.   Does that answer your question?

Q.   And did -- did you observe him walking up closer to where you were interacting with this other person?

A.   Yes.  His vehicle, being in a big cargo van, it blocked my vehicle, my lights and everything on.  It blocked the -- the view from the cars behind it.

I saw it immediately.  I watched him walk up, saw him through the -- the windows.  That's how he drew my attention.

Q.   And when he walked up, was he on a public sidewalk?

A.   He was on the public sidewalk.

Q.   Okay.  You agree with me that any member -- I mean, that -- that's a public area.  Any member of the public can walk on that sidewalk?

A.   Yes.

Q.   It's not in a restricted area, like on school grounds, right?

A.   It is not a restricted area.

Q.   Okay.  What was it then that so concerned you about Mr. Gines?

A.   It's an unknown factor.  Walking up on a traffic stop.  He is a big individual wearing a heavy coat.  I have

Daniel Ciarciaglini                    Troy Gines v. Clark County School District, et al.

Page 65

no clue who he is.  He's interfering with -- he's drawing my attention away from a traffic stop that I'm already on.  He is in front of the vehicle.  He is less than ten feet away from me.  That is my danger zone, so he presented himself to be a danger by being there, and it's distracting from the individual that I already had detained.

Q.   Okay.  Now, it's readily apparent that he's filming you with a cell phone camera, right?

A.   Yeah.  Yes.  Sorry.

Q.   And you -- and you understand that's legal for people to do?

A.   They can record, yes.

Q.   Okay.  So what bothered you about the way in which Mr. Gines was doing this?

MR. DILLARD:  Form.

Go ahead.

THE WITNESS:  Him recording was not the problem. Him being present in that close proximity was the problem.

He was within ten feet.  That is a reactionary space.  He can present a firearm.  He can present whatever he wanted at that time.

He -- his presence at that close of a proximity to a traffic stop where my attention needs to be on the driver and what's going on in that vehicle, he took away from that. He was obstructing me from doing my job.

 

Page 66

BY MR. BREEDEN:

Q.   You refer to ten feet specifically, but let me ask you.

Is there any statute, ordinance, or policy you're aware of that gives a ten-foot radius?

A.   There is no policy.  It is an officer's discretion.

There are states that are creating those, as we speak.  Some of them are 30 feet, but it is just -- Nevada has -- does not have anything.  It's the officer's discretion to tell you to back up.

Q.   Okay.  Are you aware that Arizona has one by statute, and I believe it's eight feet?

A.   I do not know about Arizona.

Q.   Okay.

A.   I know the one that we are looking at, and that we're, as a union, are pushing forward through, is the one that Florida just implemented, which is 30 feet.

Q.   Which is -- but that's clearly not in effect at the time of this stop?

A.   There's no law at this time.

Q.   Okay.  So are you saying then that the distance that you would feel safe with, that that is in your discretion?

A.   It is.

 

Daniel Ciarciaglini                        Troy Gines v. Clark County School District, et al.

Page 70

Q.   Okay.  So were you aware of that case before this incident --

A.   I was not.

Q.   -- with Mr. Gines?

Okay.  After reading that case, did your opinion of what it takes to constitute obstruction change?

A.   It has not.

Q.   Okay.  Did you -- at this time in the video, and we're 3 minutes and 57 seconds in, had you called for a supervisor or other officers?

A.   No.  I believe an officer -- when I radioed that I was -- that he was in custody, I believe an officer said he was en route.

Q.   Who was your immediate supervisor at this time?

A.   At this time, it was Sergeant Vaz.

Q.   Can you spell the last name?

A.   V-a-z.

Q.   And it appears that you're conducting the traffic stop on your own.

A.   Uh-huh.

Q.   But do you have, like, an assigned partner on this day?

A.   I have a partner that I work with at the school, yes.

Q.   Okay.  And who is that?

Daniel Ciarciaglini                    Troy Gines v. Clark County School District, et al.

Page 99

answer.  That's privileged.  Otherwise, you can answer.

BY MR. BREEDEN:

Q.   Did someone other than your attorney discuss that with you?

A.   No.

MR. BREEDEN:  Okay.  Just trying to make it easier for him to answer.

MR. DILLARD:  Thank you.

BY MR. BREEDEN:

Q.   It -- it wasn't -- for example, it wasn't like a sergeant or a member of the Clark County School District?

A.   No.

Q.   Okay.  Do you believe you violated Mr. Gines' First Amendment rights?

A.   I do not.

Q.   Do you respect the Eighth Judicial District Court's decision that you did?

MR. DILLARD:  Form.  It's argumentative.

Go ahead.

THE WITNESS:  I don't believe I violated his rights, so I believe the ruling is wrong, if that's the ruling.

I believe that they vacated it.  I don't believe that they found me in violation.  But, like I said, I did not read it.

 

Page 100

BY MR. BREEDEN:

Q.   Do you believe, having reviewed the Wilson v. First Judicial District Court case, that Mr. Gines had committed obstruction of -- on you as an officer?

MR. DILLARD:   It's been -- it's been answered. But go ahead.

THE WITNESS:   I do still believe that Mr. Gines committed obstruction.  The -- there -- there is nothing in the NRS that says that you have to be violent or physically touch somebody.  That would be an assault on a peace officer.  So I believe that the ruling is wrong.

BY MR. BREEDEN:

Q.   Have you been disciplined in any way as a result of what happened with Mr. Gines?

A.   I have not.

Q.   Have you been retrained in any way?

A.   I have not.

Q.   Are you aware of any training at the Clark County School District specifically on Wilson v. First Judicial District Court?

A.   I'm not aware.

Q.   Are you aware of any training at the Clark County School District specifically on the First Amendment rights of people to film law enforcement officers?

A.   We do have training.

Daniel Ciarciaglini                                    Troy Gines v. Clark County School District, et al.

Page 107

REPORTER'S CERTIFICATE

STATE OF NEVADA    )
                   )  SS
COUNTY OF CLARK    )


          I, Johanna Vorce, a duly certified court reporter licensed in and for the State of Nevada, do hereby certify:

          That I reported the taking of the deposition of the witness, Daniel Ciarciaglini, at the time and place aforesaid;

          That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

          That I thereafter transcribed my shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate record of testimony provided by the witness at said time to the best of my ability.

          I further certify (1) that I am not a relative, employee, or independent contractor of counsel of any of the parties; nor a relative, employee or independent contractor of the parties involved in said action; nor a person financially interested in the action; nor do I have any other relationship with any of the parties or with counsel of any of the parties involved in the action that may reasonably cause my impartiality to be questioned; and (2) that transcript review pursuant to NRCP 30(e) was requested.

          IN WITNESS WHEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 12th day of May, 2026.



_____
Johanna Vorce, CCR No. 913